**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1919

NEUHTAH OPIOTENNIONE,

        Plaintiff – Appellant,

and

HOUSING RIGHTS INITIATIVE,

        Plaintiff,

    v.

BOZZUTO MANAGEMENT COMPANY; KETTLER MANAGEMENT INC.; JBG SMITH MANAGEMENT SERVICES, LLC; TOWER CONSTRUCTION GROUP, LLC,

        Defendants – Appellees,

and

FAIRFIELD RESIDENTIAL COMPANY LLC,

        Defendant.

--------------------

AMERICAN CIVIL LIBERTIES UNION FOUNDATION; LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW; NATIONAL FAIR HOUSING ALLIANCE; WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS; AARP; AARP FOUNDATION,

        Amici Supporting Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:20-cv-01956-PJM)

Argued: January 26, 2023                                    Decided: March 4, 2025

Before NIEMEYER, RUSHING, and HEYTENS, Circuit Judges.

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Heytens joined.

**ARGUED:** Jonathan Ellis Taylor, GUPTA WESSLER PLLC, Washington, D.C., for Appellant. Michael E. Kenneally, MORGAN LEWIS & BOCKIUS LLP, Washington, D.C., for Appellees. **ON BRIEF:** Matthew K. Handley, Rachel Nadas, HANDLEY FARAH & ANDERSON PLLC, Washington, D.C.; Deepak Gupta, Peter Romer-Friedman, Linnet Davis-Stermitz, Robert Friedman, GUPTA WESSLER PLLC, Washington, D.C., for Appellant. Lynn E. Calkins, Christine N. Walz, HOLLAND & KNIGHT LLP, Washington, D.C., for Appellee Bozzuto Management Company. W. Christian Moffitt, FOX ROTHSCHILD LLP, Blue Bell, Pennsylvania, for Appellee Kettler Management Inc. Grace E. Speights, Michael Burkhardt, MORGAN LEWIS & BOCKIUS LLP, Washington, D.C., for Appellee JBG Smith Management Services, LLC. Michael Evan Jaffe, Jack McKay, David C. Grossman, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., for Appellee Tower Construction Group, LLC. Daniel B. Kohrman, Elizabeth Aniskevich, William Alvarado Rivera, AARP FOUNDATION, Washington, D.C., for Amici AARP and AARP Foundation. Jon Greenbaum, Thomas Silverstein, David Brody, Adonne Washington, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C.; Jim Davy, ALL RISE TRIAL & APPELLATE, Philadelphia, Pennsylvania, for Amici The American Civil Liberties Union Foundation, The Lawyers' Committee for Civil Rights Under Law, The National Fair Housing Alliance, and The Washington Lawyers' Committee for Civil Rights and Urban Affairs.

2

RUSHING, Circuit Judge:

Several property management companies advertised their apartment buildings on Facebook, targeting their advertisements to users who are 50 years old or younger. Neuhtah Opiotennione is older than 50 and never saw these advertisements on her Facebook News Feed. When Opiotennione learned about the companies' advertising practices, she sued, claiming the companies discriminated against her based on her age. The district court dismissed the case because Opiotennione lacked standing to sue. We affirm.

I.

Facebook is one of the most popular social media platforms in the world, with over one billion daily active users.[1] Facebook users interact with the platform largely through their "News Feed," which displays an algorithmically selected series of posts and advertisements tailored to each user. J.A. 17.

Businesses that advertise on Facebook can identify their target audience by specifying details like the location, age, gender, and other characteristics of users they want their advertisements to reach. But businesses pay Facebook to display their advertisements a limited number of times (or to obtain a certain number of clicks on the advertisements). So Facebook "uses an algorithm and machine learning" to determine which persons within the target audience will actually receive a particular advertisement. J.A. 21. On its face,

---

[1] Because this case comes to us on appeal from a motion to dismiss, we take the factual allegations of the complaint as true. *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023).

3

an advertisement does not tell a user why they received it. The user, however, can click on a small symbol in the upper right corner of the advertisement and choose the option "[w]hy am I seeing this ad?" to read Facebook's explanation of the criteria it used to match the user with the advertisement.

Defendants in this case are several property management companies that used Facebook to advertise apartments for rent near Washington, D.C. The complaint identifies advertisements the companies targeted to users 50 years old and younger. The advertisements were all similar. They generally showed a picture of the apartment or building, contained a brief description, and provided a hyperlink for users to click and learn more. The advertisements did not express a preference about who may apply to rent the apartments or make any reference to age.

Opiotennione is a 55-year-old woman who lives in Washington, D.C. In 2018 and early 2019, she "was regularly searching for rental housing in the D.C. metropolitan area." J.A. 14. According to the complaint, her search consisted of scrolling her Facebook News Feed and standing ready to "receiv[e] information via Facebook about housing opportunities" that appeared there.[2] J.A. 14.

After finding no "suitable rental housing," Opiotennione bought a home in Washington, D.C. in 2019. J.A. 14. Yet she believes there were available apartments she could have rented. As she sees it, she was denied the opportunity to learn about and apply for those apartments because of Defendants' advertising practices. Defendants, she claims,

---

[2] The complaint mentions "online and offline sources of information" and "visit[ing] properties to consider renting" but provides no further details. J.A. 15, 40.

4

prevented her from learning about available housing when they targeted their Facebook advertisements "towards younger persons." J.A. 24. Had she seen Defendants' advertisements on her Facebook News Feed, Opiotennione alleges she "would have clicked on" them to "learn more about the opportunities" and would have decided to apply for at least some of Defendants' available apartments. J.A. 41.

Believing Defendants' advertising practice to be foul play, Opiotennione brought this class action lawsuit against them.[3] She claimed that Defendants violated the Montgomery County Code, the D.C. Human Rights Act, and the D.C. Consumer Protections and Procedures Act. For relief, Opiotennione sought a declaratory judgment, a permanent injunction, and damages.

The district court dismissed Opiotennione's complaint because she lacked standing to sue. *Opiotennione v. Bozzuto Mgmt. Co.*, No. 20-cv-1956-PJM, 2021 WL 3055614, at *1 (D. Md. July 20, 2021). Specifically, the court held that Opiotennione had not suffered a concrete and particularized injury in fact. *Id.* at *4–5. Opiotennione appealed, and our review is de novo. *Bishop v. Barlett*, 575 F.3d 419, 423 (4th Cir. 2009).

---

[3] In the amended complaint, Opiotennione, joined by the Housing Rights Initiative, sued Bozzuto Management Co., Greystar Management Services L.P., Kettler Management Inc., Wood Residential Services, LLC, JBG Smith Management Services, LLC, Pinnacle Campus Living LLC, Tower Construction Group, LLC, Vantage Management, Inc., and Berkshire Communities, LLC. The Housing Rights Initiative voluntarily dismissed its claim. On appeal, Opiotennione dismissed five defendants, leaving only Bozzuto, Kettler, JBG Smith, and Tower.

II.

Article III of the Constitution limits the judicial power of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2. That constitutional phrase "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). An "essential and unchanging part" of that requirement is that a plaintiff must have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing at the pleading stage, a plaintiff must "clearly allege facts demonstrating" that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[4] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and ellipsis omitted). "Where these requirements are not met, this court would exceed its authority if it adjudicated the merits of a dispute." *Griffin v. Dept. of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (internal quotation marks and brackets omitted).

The parties here primarily focus on injury in fact, the "'[f]irst and foremost' element" of standing. *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). An injury

---

[4] The fact that a case is brought as a class action "'adds nothing to the question of standing'" because the named plaintiff must still show that she personally was injured. *Spokeo*, 578 U.S. at 338 at n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)); *see Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252–253 (4th Cir. 2020).

in fact is "an invasion of a legally protected interest" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Concreteness and particularity are two different requirements that each must be met. *Spokeo*, 578 U.S. at 339–340. A "concrete" injury is one that "actually exist[s]," is "real, and not abstract." *Id.* at 340. And an injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 339 (internal quotation marks omitted).

We agree with the district court that Opiotennione has failed to allege facts plausibly demonstrating that she has suffered a concrete and particularized injury in fact traceable to Defendants' challenged conduct. The complaint alleges that, in 2018, Opiotennione "regularly used Facebook" and never saw Defendants' advertisements. J.A. 40. Millions of people could say the same. Indeed, even numerous younger Facebook users who *were* in the target age group also did not receive the ads. So Opiotennione focuses her briefs on arguing that Defendants injured her, not by denying her the ads, but by denying her "the same chance of receiving the ads as younger people." Opening Br. 29. How did denial of an equal chance of receiving these ads injure Opiotennione? She answers that the discriminatory classification *itself* satisfies the injury-in-fact requirement. In her view, she need not do more than allege that Defendants acted in a discriminatory manner to satisfy the injury-in-fact requirement here. We disagree.

Without more, Opiotennione's claim that Defendants discriminated against people over 50 when they targeted their Facebook ads to younger people is not a particularized injury. A particularized injury is "personal, individual, distinct, and differentiated." *Public*

7

*Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007) (Kavanaugh, J.); *see also Griffin*, 912 F.3d at 654–655.  Opiotennione has not pled facts showing how the alleged discrimination itself was a personal injury to her.  Comparison to the cases on which Opiotennione relies illustrates the deficiency.

Consider the several cases Opiotennione cites for the undisputed proposition that discrimination alone can be a cognizable injury in fact.  The plaintiffs in those cases all alleged injuries that were personal to them in a way Opiotennione has not.  *See Heckler v. Mathews*, 465 U.S. 728, 738 (1984) (plaintiff received fewer Social Security benefits as a result of unequal treatment on the basis of sex); *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (plaintiff's members were prohibited from competing for certain city contracts because of discriminatory policy); *Allen v. White*, 468 U.S. 737, 757 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (plaintiffs claimed that discriminatory treatment diminished their children's ability to receive an education in a racially integrated school).[5]  In none of these cases did the court find that plaintiffs had suffered a particularized injury simply because defendants had drawn a discriminatory classification.  *Cf. Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 665–666 (7th

---

[5] The Court of Appeals cases are no different.  *See Planned Parenthood of S.C. Inc. v. Rose*, 361 F.3d 786, 790 (4th Cir. 2004) (plaintiffs were unable to express their viewpoint on their license plates); *MGM Resorts Int'l Global Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 46–47 (2d Cir. 2017) (plaintiffs suffered a concrete harm where they were put at a competitive disadvantage); *Hassan v. City of New York*, 804 F.3d 277, 289–290 (3d Cir. 2015) (plaintiffs suffered an injury to their ability to practice their religion); *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 637 (5th Cir. 2012) (plaintiffs were excluded from a benefit offered to their competitors).

Cir. 2015) ("The mere allegation of unequal treatment, absent some kind of actual injury, is insufficient to create standing."); *Carroll v. Nakatani*, 342 F.3d 934, 946 (9th Cir. 2003) ("[W]e do not find[] any authority supporting the proposition that racial classification alone amounts to a showing of individualized harm.").

By contrast, the discrimination Opiotennione claims to have suffered boils down to membership in the disfavored age group. Under her theory—in which the discriminatory classification itself is the injury in fact—anyone outside the groups targeted by the advertisements would have standing. Nothing connects her personally to Defendants' allegedly discriminatory acts so as to distinguish her from "all members of the particular [age] group[]" against which Defendants are alleged to have discriminated. *Allen*, 468 U.S. at 756.

This case is also not like those in which plaintiffs requested a benefit or information and were personally denied or misled. *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368, 374 (1982) (defendant's employees falsely told plaintiff no apartments were available); *Comer v. Cisneros*, 37 F.3d 775, 790–791 (2d Cir. 1994) (applicants for Section 8 housing were denied information, or given incomplete information, about housing opportunities); *cf. Pub. Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 449 (1989) (holding that plaintiffs have standing if they "sought and were denied" records under the Freedom of Information Act). Opiotennione does not allege that Defendants denied any request for information or housing opportunities based on her age, because she made no requests and

9

did not affirmatively seek information from Defendants.[6] Nor does she claim to have taken any steps to solicit information through other channels, like Google, apartment search engines, or even Facebook's search function.[7] While the complaint alleges Opiotennione was "searching for rental housing" in 2018 and early 2019, J.A. 14, the entirety of her "search," as it relates to Defendants, was scrolling through her Facebook News Feed, passively waiting for advertisements to appear. Her "genuine[] interest[]" in receiving housing information from Defendants this way is insufficient to demonstrate a particularized injury from Defendants' alleged discriminatory practice of targeting their Facebook advertising to younger people. J.A. 41.

Opiotennione offers two fallback theories of injury. Because each one similarly depends on Defendants personally discriminating against her, they likewise fail.

First, she argues that she suffered a cognizable injury in fact in the "[l]oss of available housing opportunities and information about them." Opening Br. 30 (boldface and italics omitted). As an initial matter, these claims depend on the speculative premise that, if Defendants had not targeted their advertisements by age, Opiotennione would have

---

[6] She also does not claim that Defendants denied her housing based on her age; instead, she explicitly states they would have approved her to rent if she had applied.

[7] This materially distinguishes the unpublished Ninth Circuit decision Opiotennione flagged in a letter of supplemental authority after oral argument in this case. There, the court concluded a plaintiff had sufficiently alleged that the defendant, Facebook, had discriminated against her personally when the plaintiff and a friend of a different race simultaneously searched Facebook Marketplace for housing using the same search criteria, yet the plaintiff did not receive the advertisements her friend received. *Vargas v. Facebook, Inc.*, No. 21-16499, 2023 WL 6784359, at *1 (9th Cir.), *as amended* (Oct. 13, 2023). As we've explained, no similarly personal denial is alleged here.

10

received them. But her own allegations show that the advertisements were targeted based on other criteria as well. *See*, *e.g.*, J.A. 70–84 (targeting, for example, "people interested in [p]ets," "people interested in [l]uxury goods," "people interested in Zillow," and "people who were recently near their business"). And Facebook—not Defendants—determined, based on "an algorithm and machine learning," who within the targeted groups actually received the advertisements. J.A. 21. No factual allegations make it plausible, as opposed to merely speculative, that Opiotennione would have received the advertisements in her News Feed absent Defendants' age targeting. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).

Moreover, in support of her asserted informational injury and the harms purportedly flowing from it, Opiotennione has not plausibly alleged she was "denied access to" or unable "to obtain" the relevant housing information. *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017); *Griffin*, 912 F.3d at 654; *see also Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 164–165 (4th Cir. 2023). As the district court observed, the targeted advertisements informed readers that Defendants' buildings had apartments available for rent and directed them to the buildings' websites where the pertinent rental information, "open to anyone, is actually provided." *Opiotennione*, 2021 WL 3055614, at *4. Opiotennione does not claim this information was available exclusively in the targeted Facebook ads; in fact, it was easily accessible to her in other ways. *Id.* As we have explained, she did not request or search for that information and face any denial or hinderance from Defendants. Her preference to scroll Facebook and await advertisements to appear on her News Feed when the pertinent information was readily available to her

11

elsewhere does not amount to a concrete and particularized denial of information. And she has not alleged facts to support any harm resulting from the difference between receiving a link to this information in a targeted ad versus the other ways it was available.

Second among her fallback theories, Opiotennione claims she suffered a stigmatic injury. While the "stigmatizing injury" caused by discrimination can accord a basis for standing, it does so "only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." *Allen*, 468 U.S. at 755 (quoting *Mathews*, 465 U.S. at 740). "[A]bstract stigmatic injury" is not cognizable. *Id.* at 755–756. Rather, a plaintiff must identify "some concrete interest with respect to which [she was] personally subject to discriminatory treatment." *Id.* at 757 n.22; *see Bostic v. Schaefer*, 760 F.3d 352, 372 (4th Cir. 2014) ("Because [plaintiffs] highlight specific, concrete instances of discrimination rather than making abstract allegations, their stigmatic injuries are legally cognizable.").

Opiotennione's allegations of stigma do not support standing. Because, as previously explained, she has not "personally been denied equal treatment," she cannot "allege a stigmatic injury suffered as a direct result" of such personal denial. *Allen*, 468 U.S. at 755. Nor has she identified any other way in which she was "'personally subject' to the dignitary harms allegedly occasioned by" Defendants' targeted ads. *Griffin*, 912 F.3d at 654. For example, Opiotennione does not claim to have seen the advertisements or that, on their face, they communicated a discriminatory preference. *Cf. Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d Cir. 1993) (holding that black plaintiffs had standing because they personally read advertisements that "would indicate a racial

12

preference to the ordinary reader"). The complaint alleges only an abstract stigma to all people over 50 because, unbeknownst to them, they were not within the target audience for Defendants' advertisements on Facebook. That is not a concrete and particularized injury in fact sufficient to support standing. *See*, *e.g.*, *Opiotennione v. Facebook, Inc.*, No. 19-cv-7185-JSC, 2020 WL 5877667, at *1 (N.D. Cal. Oct. 2, 2020) (holding Opiotennione failed to allege an injury in fact based on "not having the opportunity to receive certain financial services advertisements in her Facebook Newsfeed based on her age and gender").

### III.

We agree with the district court that Opiotennione lacks standing to invoke the jurisdiction of the federal courts. The judgment of the district court is therefore

*AFFIRMED*.